UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EVODIO BERRUM FAJARDO,

        Petitioner,

v.

KEVIN RAYCRAFT et al,

        Respondents.
_____/

Case No. 1:25-cv-1529

Honorable Paul L. Maloney

**OPINION**

    Petitioner initiated this action on November 21, 2025, by filing a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) Petitioner is a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan.

    Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action, order Respondents not to remove or attempt to remove Petitioner from the United States, declare that Respondents' actions to detain Petitioner violate the Due Process Clause of the Fifth Amendment and violate the Immigration and Nationality Act (INA), and grant the writ of habeas corpus on the ground that Petitioner's continued detention violates the Due Process Clause and order Petitioner's immediate release. (*Id.*, PageID.11.)[1] For

---

[1] In an order entered on December 2, 2025, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on December 5, 2025, (ECF No. 4), and Petitioner filed his reply on December 10, 2025, (ECF No. 5).

the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I. Factual Background

Petitioner is a native and citizen of Mexico. (Pet., ECF No. 1, PageID.1.) He first entered the United States prior to 2004 "without being inspected or admitted by an immigration officer." (Hoppe Decl. ¶¶ 4–5, ECF No. 4-1, PageID.28.)

On July 5, 2005, Petitioner was granted voluntary departure by an immigration judge. (*Id.*, ¶ 9, PageID.29.) After Petitioner did not depart the United States by the deadline previously set of November 2, 2005, Petitioner's order of voluntary departure became an order of removal. (*Id.*) Petitioner eventually departed the United States on March 16, 2006 (*id.*, ¶ 10); however, Petitioner returned to the United States.

On July 27, 2015, ICE Enforcement and Removal Operations (ERO) encountered and arrested Petitioner near Chicago, Illinois. (*Id.*, ¶ 11.) ERO reinstated Petitioner's order of removal to Mexico. (*Id.*, ¶ 12.) Petitioner "claimed fear of return to Mexico," and was provided with a "reasonable fear interview;" however, the reviewing asylum officer denied Petitioner's claim. (*Id.*, ¶ 12.) An immigration judge likewise upheld the removal order to Mexico, (*id.*, ¶ 13, PageID.30) and Petitioner was removed to Mexico on November 17, 2015 (*id.*, ¶ 14).

On June 3, 2016, ICE ERO again encountered and arrested Petitioner, this time near Addison, Illinois, and reinstated his removal order for second time. (*Id.* ¶ 15.) On July 27, 2016, an asylum officer found that Petitioner "had a reasonable fear of return to Mexico" and placed Petitioner in "withholding only" proceedings. (*Id.* ¶ 17.) On October 13, 2016, an immigration judge ordered Petitioner removed from the United States but granted Petitioner's application for withholding of removal under section 241(b)(3) of the INA based upon Petitioner's "demonstrated

2

fear of returning to Mexico." (*Id.* ¶ 18, PageID.30–31.) Petitioner was released from detention with an order of supervision, requiring that Petitioner attend a yearly check-in with ICE. (Pet., ECF No. 1, PageID.4; Order of Supervision, ECF No. 1-1, PageID.12.)

On October 13, 2025, ICE agents encountered and arrested Petitioner near Addison, Illinois. (Hoppe Decl. ¶ 19, ECF No. 4-1, PageID.31.) ICE did not provide Petitioner with any explanation for why it had revoked his order of supervision and it did not give Petitioner an opportunity to respond. (Pet., ECF No. 1, PageID.4.)

As of December 4, 2025, ICE had submitted a request for removal of Petitioner to a country other than Mexico, which remained pending. (*Id.* ¶ 20.)

Prior to his detention, Petitioner resided in Addison, Illinois, with his three United States citizen children. (Pet. ECF No. 1, PageID.1.) He serves as the primary source of financial support for his family. (*Id.*)

## II.     Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### III. Merits Discussion

#### A. Statutory and Regulatory Provisions Governing Petitioner's Detention

Here, Petitioner's prior order of removal was last reinstated by an immigration judge on October 13, 2016. (Hoppe Decl. ¶ 18, ECF No. 4-1, PageID.30–31.) Neither party appealed the immigration judge's order of removal. (*Id.*) According to the INA,

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).

The only limited exception to removal after reinstatement of a prior order is if the noncitizen requests withholding of removal to a particular country "by expressing a fear of returning to the country designated in that order." *See* 8 C.F.R. § 241.8(e). Specifically, under 8 U.S.C. § 1231(b)(3)(A), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." The parties do not dispute that the immigration judge granted Petitioner withholding of removal to Mexico on October 13, 2016. (Pet., ECF No. 1, PageID.2; Hoppe Decl. ¶ 18, ECF No. 4-1, PageID.30–31.)

Ordinarily, when an individual is issued a final order of removal as Petitioner has here, that person must be removed from the country within 90 days. 8 U.S.C. § 1231(a)(1)(A). Except for situations where the person is "detained or confined" in a case other than the "immigration process," or where a court orders a stay of removal, the 90-day removal period begins when the removal order becomes administratively final. *Id.* § 1231(a)(1)(B). Under § 1231(a)(6), the

government is permitted to continue to detain individuals who are deemed "inadmissible" beyond the removal period, or it may release them under specified terms of supervision. *Id.* § 1231(a)(6). However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released. *Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001); *see* 28 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the [90-day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

The government did not choose to detain Petitioner following the October 13, 2016, order. Instead, consistent with § 1231(a)(6), Petitioner was released from detention with an order of supervision, requiring that Petitioner attend a yearly check-in with ICE. (Pet., ECF No. 1, PageID.4; Order of Supervision, ECF No. 1-1, PageID.12.) There is no evidence before the Court that Petitioner failed to comply with that requirement.

The government has promulgated regulations in the Code of Federal Regulations concerning the release of noncitizens who are subject to a final removal order. *See* 8 C.F.R. § 241.4; 8 C.F.R. § 241.13. These regulations—specifically, §§ 241.4 and 241.13—also govern the revocation of such noncitizens' release. The agency must comply with the applicable regulatory and statutory requirements. *See, e.g., United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), *superseded in part by statute on other grounds as recognized in Dept. of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 135 (2020) ("[A]s long as the regulations remain operative, the Attorney General denies himself the right to sidestep" those regulations.). As the Sixth Circuit Court of Appeals has explained:

> "The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates. *See Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959); *Service v. Dulles*, 354 U.S. 363, 372 (1957); *Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). An agency's failure to follow its own regulations 'tends to cause unjust

5

> discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional right to due process. Where a prescribed procedure is intended to protect the interests of a party before the agency, 'even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed.' *Vitarelli*, 359 U.S. at 547 (Frankfurter, J., concurring); *see also* Note, *Violations by Agencies of Their Own Regulations*, 87 Harv. L.Rev. 629, 630 (1974) (observing that agency violations of regulations promulgated to provide parties with procedural safeguards generally have been invalidated by courts).

*Wilson v. Comm'r Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir.1998)

8 C.F.R. § 241.4 generally governs the continued detention of noncitizens under a final order of removal. Section 241.4(l)(2) provides:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

Section 241.13 which governs the detention of noncitizens under a final order of removal where "there is no significant likelihood of removal in the reasonably foreseeable future." § 241.13(b). If the noncitizen was released pursuant to § 241.13, release may be revoked if, "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2).

6

Based on the information before the Court, there is nothing to suggest that the purpose of Petitioner's release has been accomplished or that release would no longer be appropriate under § 241.4. There is also nothing to suggest that Petitioner violated the terms of his release. (*See* Pet., ECF No. 1, PageID.10) (representing, through counsel, that Petitioner "has been complying with his reporting requirements since 2016").) And, although Respondents contend that they are exploring removal of Petitioner to a country other than Mexico, there is nothing to suggest that, on October 13, 2025, when ICE agents encountered and arrested Petitioner, the government had determined that there was a significant likelihood that Petitioner would be removed in the reasonably foreseeable future. (*See* Hoppe Decl. ¶¶ 19–20, ECF No. 4-1, PageID.31) (explaining that, as of December 4, 2025, ICE had not yet confirmed an ability to enforce Petitioner's order of removal).) Indeed, there is no evidence before the Court that Respondents made any attempt to comply with the regulations governing revocation of the decision to release Petitioner.

Further, the regulations governing release provide that, upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); 8 C.F.R. § 241.13(i). "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.13(i). Courts examining the requirements for revocation of release following a final order of removal have consistently held that the procedural requirements of notice and an interview are required for revocation of a noncitizens release. *Constantinovici v. Bondi*, No. 3:25-cv-02405-RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) (collecting cases; citations omitted). This Court agrees.

Here, Petitioner represents that he was not provided with notice of revocation or the reason(s) for the revocation and was not given an opportunity to respond. (Pet., ECF No. 1, PageID.4.) Respondents do not contend otherwise. Accordingly, based on the information that is presently before the Court, the Court concludes that Respondents failed to follow the applicable regulatory requirements to revoke Petitioner's § 1231(a)(6) release.

### B.   Fifth Amendment Due Process Considerations

Petitioner argues that his detention violates the Fifth Amendment's Due Process Clause. (*See* Pet., ECF No. 1, PageID.8–10.) Respondents counter Petitioner's arguments, arguing that "in the immigration context, due process is defined by—and coextensive with—the procedures Congress has prescribed," and that "[m]andatory detention during and after removal proceedings is a constitutionally permissible component of that system." (Resp., ECF No. 4, PageID.21.)

Respondents rely upon *Zadvydas*, which holds that § 1231 of INA does not permit indefinite detention of a noncitizen post-order of removal but implicitly limits detention to a period reasonably necessary to bring about removal from the United States which, under *Zadvydas* is a presumptive limitation of six months. *Zadvydas*, 533 U.S. at 701.

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.

*Id.* However, Respondents arguments confuse their ability to hold Petitioner once properly detained with Petitioner's "right not to be detained without adequate—in fact, without *any*— process." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."

8

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted). And 8 C.F.R. § 241.4 and § 241.13, described in detail above, were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Santamaria Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). "The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *9 (S.D. Fla. Sept. 9, 2025) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("At one level, today's dispute may seem semantic, focused on a single word, a small one at that. But words are how the law constrains power.")). In its most elemental formulation, "the fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Petitioner was not provided with that opportunity.

The Court, therefore, agrees with courts around the country in concluding that the failure to provide Petitioner with notice of revocation and an informal interview promptly after his detention with a meaningful opportunity to contest the reasons for revocation in accordance with 8 C.F.R. § 241.4 and § 241.13 violates Petitioner's right to due process under the Fifth Amendment and requires release. *See, e.g.*, *Ceesay*, 781 F. Supp. 3d at 166; *Rombot v. Souza*, 296 F. Supp. 3d 383, 387–88 (D. Mass. 2017); M.S.L. v. Bostock, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *10–12 (D. Or. Aug. 21, 2025); *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *9 (S.D. Fla. Sept. 9, 2025); *Ghafouri v. Noem*, No. 3:25-CV-02675-RBM-BLM, 2025 WL 3085726, at *6 (S.D. Cal. Nov. 4, 2025).

### IV.     Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of the United States Secretary of Homeland Security. (Resp., ECF No. 4, PageID.24.)

"The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 494–95 (1973). Thus,

> [r]ead literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ "within its jurisdiction" requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495.

The Sixth Circuit has concluded "that a detained alien generally must designate his immediate custodian—the [Immigration and Naturalization Service (INS), the predecessor to the present immigration-related agencies,] District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). Here, Petitioner has named the Director of the Detroit Field Office of ICE and the United States Secretary of Homeland Security as Respondents. (Pet., ECF No. 1, PageID.1, 3.)

In *Roman v. Ashcroft*, the Sixth Circuit stated that although it "conclude[d] that the immediate custodian rule generally applies to alien habeas corpus petitioners, . . . [there is] the possibility of exceptions to this rule." *Roman*, 340 F.3d at 322. The *Roman* court explained:

> Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition. *Chavez–Rivas*[ *v. Olsen*], 194 F. Supp. 2d [368,] 374 [(D.N.J. 2002)]. Aliens remaining in detention for extended periods are often

> transferred several times during their detention. *See Lee v. Ashcroft*, 216 F. Supp. 2d 51, 55 (E.D.N.Y. 2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General."); . . . . In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias–Agramonte*[ *v. Comm'r*], [No. 00 CIV. 2412 (RWS),] 2000 WL 1617999, at *8 [(S.D.N.Y. Oct. 30, 2000)] (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

*Id.* at 325–26. Thus, the Sixth Circuit concluded, "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326.

In light of the foregoing, to ensure that Respondents maintain authority to enforce this Court's grant of habeas relief in the event that Petitioner is transferred out of the Western District of Michigan, the Court will not dismiss Secretary Noem as a Respondent to these proceedings.

## V.  Petitioner's Request for a Stay of Removal Proceedings

In addition to challenging his detention, Petitioner requests that the Court order Respondents not to remove or attempt to remove Petitioner from the United States. (Pet., ECF No. 1, PageID.10.) Enacted in 1996, § 1252 governs "judicial review" of orders of removal. Subsection (g) provides:

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, ... no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Because Petitioner's request for a stay of his removal proceedings concerns a decision or action by the Attorney General to "commence proceedings, adjudicate cases, or execute removal orders," the Court finds that § 1252(g) precludes the Court's jurisdiction over such claims.

11

The Court will, therefore, dismiss Petitoner's request for a stay of his removal proceedings for lack of jurisdiction.[2]

### Conclusion

For the reasons discussed above, the Court will enter a judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from custody immediately, subject to any conditions that existed under Petitioner's order of supervision. The Court will also order Respondents to file a status report within three days of the issuance of the Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. Further, the Court will dismiss Petitioner's request that the Court order Respondents not to remove or attempted to remove Petitioner from the United States for lack of jurisdiction.

Dated:   December 17, 2025                               /s/ Paul L. Maloney
                                                                                              Paul L. Maloney
                                                                                              United States District Judge

---

[2] The Suspension Clause does not apply to make habeas relief available to Petitioner's request for a stay in the face of § 1252(g). As the Court in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), clarified, the Suspension Clause applies only to those "core" habeas claims seeking release from custody; it does not include claims seeking relief from removal in the immigration context. *Id.* at 108, 119.